The opinion of the Court was delivered by
Dunkin, Ch.
By the marriage settlement set forth in the pleadings, it is (among other things,) provided, that the trustees shall permit the intended husband, Robert L. Baker, to receive the rents, income and profits of the trust estate for the joint maintenance of himself and his intended wife during their joint lives, but not subject to his debts; “ and in case any creditor of the said Robert L. Baker, should attempt to charge the said income and profits with any debt of the said Robert *387 L. Baker, then, from the issuing of any process so to charge the same, in trust, that the said trustees should pay over to the said Isabel 0. Field the said rents, issues and profits, to be applied to her own separate use and behoof, and at her free will and pleasure, freed from the debts, contracts or engagements of the said Robert L. Baker.” And it was expressly declared that in case the said Isabel 0. Field siould be minded to dispose of any portion of the said premises in any manner whatever, then that the said trustees should hold and convey the same to and for such person or persons, and subject in all respects to such limitations and conditions as she, the said Isabel 0. Field should, from time to time, in her lifetime, by any deed or other instrument in writing, executed by her in the presence of two or more witnesses, or by her last will and testament duly executed, order, direct, limit and appoint.
Under this last mentioned power, Mrs. Baker, sometime after her marriage, executed deeds in favor of the plaintiff, which became the subject of judicial investigation in the case of Roux vs. Chaplin, reported 1 Strob. Eq. 129. It was there ruled that the first clause of the marriage settlement was “ a grant of a life estate to Robert L. Baker, explicit and unequivocal and that the second clause must be regarded “ as giving the wife power to make any disposition subject to the joint estate for life, and to take effect after its termination; thus constituting a remainder expectant on that termination.” The plaintiff -was accordingly enjoined from interfering with the possession or management of the estate during the joint lives of Robert L. Baker and his wife, and the trustees were directed to pay to the said Robert L. Baker the income and profits during that period. This decree was made at February Sittings, 1847.
In November, 1854, the plaintiff instituted these proceedings, setting forth the provisions of the marriage settlement, and referring to the decretal orders heretofore made, but alleging that one Michael O’Oonnor had in his lifetime obtained a *388 judgment against Robert L. Baker, and that Mary O’Connor, bis executrix, had, in May, 1854, filed a bill in this Court, seeking to obtain payment of the said judgment out of the rents and profits of the trust estate, and that a subpoena ad respondendum had been issued and served on the parties — that the plaintiff was advised that the deeds of his mother (Mrs. Baker,) to himself, had thereby “ become of active and immediate operation,” and prayed that “ the trustees might be ordered and decreed to stand legally seized and possessed forthwith, for the benefit of the plaintiff, of the property and increase thereof in the said deeds of appointment mentioned,” &c.
The answer of the trustee admits the filing of O’Connor’s bill, “ but that the defendant was advised that the said bill was, on the face of it, destitute of equity, and must have been dismissed with costs against this defendant. But that he was advised and believed that the said Mary O’Connor had come to a compromise with the said Robert L. Baker, and wholly abandoned the said bill.”
Robert L. Baker’s answer admits the judgment of O’Connor, which, he avers, was for a debt contracted by his wife while she was living separate from him — that a bill was filed in the Court of Equity on 3 May, 1854, to have the judgment satisfied out of the income of the trust estate; but “ that no further proceedings have been had in the said cause, and the defendant was advised that the said bill, if brought to a hearing, must have been dismissed for want of equity; and, in fact, says, that the said Mary O’Connor abandoned her said bill before it was brought to a hearing, or any answer put in, and waived the relief thereby prayed.”
When this cause was heard at the Circuit, the opinion was expressed that, in no view, was the plaintiff entitled to maintain his bill — that the plaintiff’s interest under the deeds of appointment was subordinate to the estate for the joint lives of Robert L. Baker and wife, created by the first clause of the *389 settlement — and that, whether that estate was in Robert L. Baker, or in Mrs. Baker for her sole and separate use in consequence of the action of Baker’s creditors, the result was the same — the remainder of the plaintiff was expectant upon the termination of the estate for the joint lives, and that such appeared to be the construction of the Court of Appeals in 1847, when, by the decree then proilounced, the plaintiff was “ enjoined from interfering with the possession or management of the estate during the continuance of the joint lives of the said Baker and wife.” Although this was sufficient to dispose of the plaintiff’s case, yet it is due to the parties to meet the preliminary question made by the pleadings, and leave the other question where it is placed by the decree of 1847, when the inquiry shall become necessary as to the proper construction and effect of that adjudication.
The settlement provides that, “ in case any creditor of Robert L. Baker shall attempt to charge the said income and profits with any debt of said R. L. Baker, then, from the issuing of any process so to charge the same, the trustees should pay over the said income and profits to the said Isabel C. Eield,” &c., “ to be applied to her own separate use,” &c. A rule has been already prescribed for the interpretation of this instrument. In Roux vs. Chaplin, it is said to be “ proper for the Court, collating all the provisions of an instrument for the purpose of giving it construction, if there be anything ambiguous, to make such construction as will give the whole a reasonable effect. It should incline against any construction which would operate in an unusual manner, harshly and injuriously to any party, and in favor of such as seems most conformable to the general purposes for which similar instruments are executed. It is also a rule, that, if there should be an ambiguity, the construction must be most strongly against the grantor.”
The trustees were to permit Baker to receive the income and profits of the property “for the joint use and maintenance of himself and his wife for and during their joint natural *390 lives.” As has been already determined, this clause gave to Baker a life estate in the rents and profits. As a necessary incident this estate would be liable to the payment of his debts— the declaration of the instrument to the contrary, being, in itself, wholly ineffectual and nugatory.
“ If property be given to a man for his life, the donor cannot take away the incidents of a life-estate”(a). Any interest, legal or equitable, joint or several, must be subject to the incidents of property, and may be reached by his creditors and rendered available for the satisfaction of their demands. Rivers vs. Thayer(b). The only mode of preserving the' property from the creditors, is by giving it to some one else. The primary object of the settlement — the declared purpose of the parties — was, that Baker should receive the income of the estate for the joint use and maintenance of himself and his wife. This purpose was liable to be frustrated by the successful interference of Baker’s creditors. With a manifest view to established principles, and in order to obviate the consequences or prevent the success of such interference, the proviso was introduced.
It may be premised that clauses of this character, the effect of which is to determine, or defeat, an estate clearly given, are always construed strictly. And this is done although it sometimes happens that the consequences of such construction are at variance with the apparent intention of the parties.— Such is the case of Whitfield vs. Prickett, 2 Keen, 608, where the testator’s purpose was obviously to secure the enjoyment of the annuity to his nephew personally, and, therefore, limited it over to his children in the event of his voluntary alienation, or anticipation, thereof. Yet the Court ruled that, upon a commission of bankruptcy against the nephew, the limitation to the children did not take effect but that the annuity passed to the assignees in bankruptcy. So, where the previous estate is to *391 be defeated, or tlie limitation take effect, in consequence of an act done by the life tenant, the Court have adopted a liberal construction of his conduct in order to maintain his estate. — • Jones vs. Wyse, 2 Keen, 285, was the case of a marriage settlement. The rents and profits were to be .paid by the trustees to the husband until (among other things) he should sell, charge or incumber the same, “ or should attempt or agree so to do,” and from and after such event, upon trust for the children of the marriage. The husband made several efforts to raise money by sale or mortgage of the-property, but was prevented from effecting such sale or charge by reason of the language of the settlement. On a bill filed by the children it was insisted that a forfeiture had been committed, and that the limitation over had taken effect. But Lord Langdale, M. R., was of opinion that the conduct of the defendant did not amount to a forfeiture within the meaning of the settlement. And his judgment is sustained by the authority of Sir Anthony Mildmay’s case, 6 Co. 40, b. 3 Jac. I. It was there resolved that a proviso restraining a party from “attempting or going about” to alien the estate vested in him, was inoperative. These words, it was said, were uncertain and void in law; for that “ the law did not define quid sit conatus ; and that therefore, the rule of law decided that non efficit conatus nisi sequitur effectus, and the law rejects conations as things uncertain which cannot be put in issue.” And to the same effect is Pierce vs. Win, 2 Ventr. 321, where an “ attempt to alien ” was held to be a void condition ; “ for non constat what shall be judged an attempt, and how it could be tried.”
But this is no controversy -between the creditors of Baker and the plaintiff claiming under the limitation, as in Whitfield vs. Prickett; nor yet between Baker and the plaintiff insisting on a forfeiture and consequent devolution of the estate because of any act or default of the life tenant- in derogation of the provisions of the deed, as in Wyse vs. Jones, where, it may be observed, the life tenant would have had little cause of com *392 plaint if a less indulgent construction had been given to his own improvident acts. But the charge of the plaintiff is — such, is the foundation of his bill — that Baker’s estate has been extinguished by the attempt on the part of his creditor to avail himself of that interest, although the attempt may have proved abortive, or have been abandoned. To adopt this construction would seem a perversion of the meaning of the proviso for the purpose of defeating the object it was designed to accomplish, of destroying the primary estate it was intended to protect.— In answer to the position thus assumed by the plaintiff the argument in Sir Anthony Mildmay’s case may be adopted without scruple or hesitation. The law does not define “ an attempt.” It is impossible to try an issue upon it. The Court cannot recognize anything as an attempt which is not effectual. But. the precise language of the proviso may not be necessarily obnoxious to this nice criticism. It seems to have been prepared with care, and the Court should, in case of ambiguity} adopt such version of the terms used as will sustain the estate rather than defeat it — ut res magis valeat quarn per eat. It is not declared that the life estate of Baker shall determine immediately upon the attempt made by a creditor, but that, in case of an attempt by a creditor to charge the income and profits, then, from the issuing of any process so to charge the same, the trustees shall pay over to Mrs. Baker, &c. It was not in the 'contemplation of the parties to restrict Baker from contracting debts. The former pleadings show that he was already deeply embarrassed. The design was to secure him in .the enjoyment of the income for the joint use and maintenance of himself and his wife, during their joint lives ; and to cause his interest to cease only when it could not be so enjoyed, and because it could not be so enjoyed any longer. But the plaintiff insists that, so soon as the subpoena to answer was signed, or served, Baker’s interest ceased. It might be sufficient to . say that the effect of such construction would have enabled the plaintiff himself, on the day after the execution of his deed of *393 appointment, in 1845, to put an end to Baker’s life estate by purchasing up any claim against him, however stale, or insignificant in amount, and then filing a bill in equity, however absurd and frivolous, against the trustees. To avoid any such conclusion it is only necessary to give a reasonable interpretation to every part of the proviso. The subpoena to answer as well as all previous proceedings may well be classed as attempts to charge, which are of no consequence unless they produce effects ; and, therefore, the limitation or devolution of the estate was not made to depend on them. But, if a decree or judgment should be rendered, “then, so soon as process should issue” to give effect to the attempt of the creditors, the interest of Baker was declared to cease, and the income became thenceforth payable to another. If the conveyancer had used the expression “as soon as execution should issue to charge it,” &c., — although less apt and appropriate, no reasonable doubt could be entertained as to the event contemplated. But the term process is of very general signification, and is applied to original process, mesne process and final process. The purpose of the proviso is fully accomplished by supposing it to have been used in the last sense. Nor is it deemed requisite further to pursue the subject. In all cases of this character the view taken by Sir John Leach in Wyatt vs. Cooper, 5 Mad. R., 293, gives the proper direction to the inquiry, and probably suggests the true test. “This proviso,” says he, “is best construed by reference to the previous direction of payment, because the purpose of this proviso is merely to direct the application of the rents and profits when they can no longer be paid into the' proper hands of the nephew, and for his own use and benefit.” In that case the bankruptcy of the nephew intervened and prevented the application of the rents and profits as previously directed, and his interest was held to have ceased. Such -was the manifest object of the proviso in this ease, and no more— whatever may be the terms in which it is couched. The contingency has not arisen when the rents and profits can no longer *394 be paid to Robert L. Baker for tbe purposes therein declared, and his life estate is unaffected by any of the matters disclosed in the pleadings.
It is ordered and decreed that the appeal be dismissed.
Johnston, Darsan and Wardlaw, 00., concurred.

Appeal dismissed.

 Branden vs. Robinson, 18 Ves. 436.

 Ante, p. 136.